UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

PEDRO LUIS PAGAN,            )
        Plaintiff            )
                             )
        v.                   )   C.A. No. 13-cv-30027-MAP
                             )
CAROLYN W. COLVIN,           )
Acting Commissioner, Social  )
Security Administration,     )
        Defendant            )

**MEMORANDUM AND ORDER REGARDING PLAINTIFF'S MOTION FOR ORDER
REVERSING COMMISSIONER'S DECISION AND
DEFENDANT'S MOTION TO AFFIRM COMMISSIONER'S DECISION**
(Dkt. Nos. 15 & 19)

March 26, 2014

PONSOR, U.S.D.J.

## I. INTRODUCTION

Plaintiff, Pedro Luis Pagan, seeks a reversal or remand of the final decision of Defendant, Carolyn Colvin, Acting Commissioner of the Social Security Administration, denying his application for disability benefits and supplemental security income. On November 21, 2013, counsel appeared for argument on Plaintiff's Motion for Order Reversing Decision of the Commissioner (Dkt. No. 15) and Defendant's Motion to Affirm the Decision of the Commissioner (Dkt. No. 19). For the reasons stated below, the court will allow Plaintiff's

motion and deny Defendant's motion.

## II. FACTUAL BACKGROUND

At the time of his initial application, Plaintiff was a 46-year-old male (d.o.b. 7/24/1963) claiming disability due to neck pain and low back pain which radiated down his left leg, as well as due to anxiety related disorders. He lives in Springfield, Massachusetts, by himself, but has had a relationship for 18 years with the same woman, the mother of three of his five children, the youngest of whom is 14. He has worked as a forklift operator, laborer, personal care attendant, shipping and receiving employee, and wire maker. He has not been employed since September 26, 2009.

Because the basis for Plaintiff's challenge is the alleged failure of the Administrative Law Judge ("ALJ") to adequately evaluate or account for Plaintiff's mental disabilities, the following recitation of facts is focused on Plaintiff's mental health history, as established in the Social Security Administration's Administrative Record (SSA Admin. R. of Soc. Sec. Proceedings, Dkt. No. 14 (hereinafter "AR")).

A. Medical Background

Plaintiff began receiving mental health treatment at School Street Counseling in Springfield beginning in 2008. He was diagnosed by Jaime Pons-Valerio with generalized anxiety disorder. (AR 261.) His therapist referred him to Dr. Mary Colageo for a medication evaluation. Plaintiff and his therapists noted that he became frightened easily, was afraid of the dark, and had short term memory and concentration issues. Dr. Colageo also diagnosed Plaintiff with generalized anxiety disorder, as well as post-traumatic stress disorder ("PTSD") and major depressive disorder. She further noted that he had problems related to finances. (AR 512.) Additionally, she determined that Plaintiff had a Global Assessment of Functioning (GAF) score of 58 on a scale of 100.[1] Finally, this exam also reported that Plaintiff was not completely compliant with his medication regime because of the side effects; however he was generally

---

[1] The GAF score is used by mental health physicians and clinicians to rate the social, occupational, and psychological functioning of adults. A score between 51 and 60 denotes moderate symptoms, "such as flat affect or occasional panic attacks or moderate difficulty in social, occupational, or school functioning, such as having few friends or conflicts with peers or coworkers." Schell v. Astrue, Civ. A. No. 10-10346, 2012 WL 745024 at *3 n.1 (D. Mass. Mar. 7, 2012).

alert and cooperative throughout the examination.

In March 2010, Plaintiff saw Victor Carbone, Ph.D., for a consultation. Again, Plaintiff presented as cooperative, though he spoke rapidly and excessively. He reported feeling depressed and anxious, and his appearance was somewhat disheveled. (AR 477.) In his examination notes, Dr. Carbone noted that Plaintiff "refused to discuss any details of his past sexual traumatization," but "claimed flashbacks and difficulties in the present day." (AR 477.) Dr. Carbone further noted that Plaintiff's "judgment for the management of his everyday activities appears to be grossly intact," though Plaintiff relied heavily on his girlfriend. (Id.) Dr. Carbone diagnosed Plaintiff with depressive disorder, "rule-out" PTSD,[2] and alcohol abuse. He also gave Plaintiff a GAF score of 59. (AR 478.)

In June 2010, Dr. Edgardo C. Bianchi, a psychiatrist at School Street Counseling, gave his opinion on a "Medical

---

[2] "Rule-out" references most often signify that the symptoms are generally consistent with a certain diagnosis, but ongoing examination and a longer duration of the symptoms would be needed to confirm it. Confusingly, however, some clinicians also use the phrase "rule-out" as a layperson might, to mean that the referenced diagnosis has been eliminated as a possibility.

4

Source Statement of Ability to Do Work Related Activities" form[3] that Plaintiff had "slight" impairments in understanding, remembering, and carrying out both simple and detailed instructions due to his anxious mood. With respect to his ability to respond appropriately to coworkers and supervisors, Dr. Bianchi determined that Plaintiff had "marked" impairments in interacting appropriately with people and with responding appropriately to work pressures due to his "poor anger management skills [and] inability to implement strategies of emotion regulation." (AR 598.)

In October 2010, Manuel Montoya Tajon, Psy.D., at School Street Counseling, completed the same Medical Source Statement form and opined that Plaintiff had "marked" to "extreme" impairment in understanding, remembering, and carrying out both simple and detailed instructions. Tajon wrote that Plaintiff's "extreme level of anxiety due to

---

[3] The scale on the Medical Source Statement of Ability to Do Work Related Activities is: "none," meaning absent or minimal limitations; "slight," meaning mild limitations but the person can generally function well; "moderate," meaning some limitations but still able to function satisfactorily; "marked," meaning serious limitation where the ability to function is severely limited but not precluded; and "extreme," meaning a major limitation where there is no useful ability to function. (AR 547.)

5

symptoms of PTSD interfere with his ability to focus and follow through." (AR 548.) Additionally, Plaintiff's fear of large crowds or being "blocked in" provoked a "panic fear" and an intense need to flee the area, thus making it impossible for Plaintiff to remember or carry out responsibilities. (Id.) Tajon also determined that Plaintiff had "extreme" impairments in interacting appropriately with people and with handling work pressures because of his powerful emotional responses to perceived slights.

Later in 2010, Plaintiff reported that medication had improved his control of his temper and his mood generally. (AR 581.) He continued to report some sleep disturbance. (Id.) However, in December 2010, Plaintiff stopped taking some of his medications again; he thought he had too many pills. (AR 585.) In February 2011, Plaintiff's mood was well controlled with medications. Though he had good and bad days, generally he slept well and appeared calmer and less anxious. (AR 587-88.)

B.  **State Agency Opinions**

In February 2010, the non-examining state agency

psychologist, S. Fiore, Psy.D., reviewed Plaintiff's medical record and opined that Plaintiff had anxiety related disorders and a history of substance abuse. Fiore also found that Plaintiff's anxiety was evidenced by "[r]ecurrent and intrusive recollections of a traumatic experience, which are a source of marked distress." (AR 462.) She determined that his mental disorders resulted in "moderate" limitations in Plaintiff's daily activities, his social functioning, and his concentration, persistence, and pace. Fiore noted no episodes of decompensation.[4] Fiore concluded that Plaintiff could understand and recall simple information; maintain attention and concentration for two hours at a time within a simple-task setting with normal supervision; and tolerate minimal social demands, as well as simple changes in routine of a simple-task setting.

C. Application, Appeal, and Hearing

Plaintiff's November 16, 2009, applications for benefits were denied on February 26, 2010, and again denied

---

[4] Decompensation is "[t]he appearance or exacerbation of a mental disorder due to a failure of defense mechanisms." Stedman's Medical Dictionary 445 (26th ed. Williams & Wilkins 1995).

7

following a request for reconsideration on July 27, 2010. Plaintiff filed a timely request for a hearing with an ALJ in August 2010. The hearing took place on June 3, 2011.

At the hearing, Plaintiff testified that he attended weekly counseling sessions and took medication for anxiety and depression. He became nervous in crowds, but generally his bouts with anxiety depended on his mood. Plaintiff stated that he cooked, washed dishes, shopped with his girlfriend, and watched television.

The medical expert at the hearing was Carol Kabacoff, a licensed psychologist. After reviewing Plaintiff's records, she noted the lack of detail in the treatment records, specifically around the issues of trigger events and the use of particular coping therapies. Dr. Kabacoff testified that Plaintiff had "mild" restrictions in activities of daily living, "moderate" restrictions in social functioning and concentration, as well as in persistence and pace. In her opinion, Plaintiff would be successful in an environment with a limited number of co-workers, where he worked with things, not people. The vocational expert testified that, given Plaintiff's limitations, he could perform the job of a

packer, inspector, and bench worker, jobs that existed in significant numbers in the local and national community.

On June 23, 2011, the ALJ issued his decision denying Plaintiff benefits.

D. <u>ALJ's Decision</u>

The ALJ followed the five-step sequential disability determination. 20 C.F.R. § 416.920. At step one, he determined that Plaintiff had not been engaged in substantial gainful activity since the onset date of his alleged disability. At step two, the ALJ found that Plaintiff had the severe impairments of posterior tibial tendon dysfunction/tendinopathy/left ankle pain, degenerative disc disease of the cervical and lumbar spine, anxiety, and asthma. At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal an entry on the List of Impairments. (AR 17.)

In discussing his finding with respect to Plaintiff's lack of a listed mental impairment -- which would have mandated a finding of disability -- the ALJ found that Plaintiff's limitations in daily living, social functioning, and concentration did not exceed a "moderate" level of

difficulty. (AR 17-18.) Also, the ALJ noted that Plaintiff had not experienced any episodes of decompensation. (AR 18.) The ALJ stated that the standard for a finding of mental impairment rising to the level of a listed anxiety disorder under 12.06 required:

> at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.

(AR 17.)

Having found an absence of sufficient evidence to identify a mental impairment severe enough to satisfy the listing at 12.06, the ALJ proceeded to step four of the analysis and determined that Plaintiff had a residual functional capacity ("RFC") to perform sedentary work. He defined this as a job involving "lifting no more than 10 pounds at a time and occasionally lifting or carrying" small items or tools and requiring only occasional walking and standing. 20 C.F.R. § 404.1567. The ALJ also added the following limitations:

> no crawling, use of foot pedals with left foot, exposure to unprotected heights, climbing ladders, or exposure to hazards such as dangerous

>     machinery; no more than occasional climbing,
>     stooping, bending, balancing, twisting, or
>     kneeling; no exposure to extreme cold; avoid
>     concentrated exposure to fumes, dust, smoke,
>     chemicals, gases, and other respiratory irritants;
>     limited to simple, routine, unskilled tasks, which
>     require limited concentration; no more than
>     minimal interaction with the general public and
>     co-workers; and work with things rather than
>     people.

(AR 18.) Given these restrictions, the ALJ concluded that Plaintiff was unable to return to his past, relevant employment.

In determining that Plaintiff's mental impairments did not amount to a disability, the ALJ stated that he gave the greatest weight in opinion evidence to Dr. Kabacoff. She testified at the hearing, had access to all Plaintiff's relevant medical records, and interacted with Plaintiff at the hearing. (AR 20.) The ALJ also gave significant (though not primary) weight to the opinion of Dr. Fiore, the state agency assessor. Some weight was given to Dr. Carbone on the issue of the GAF score, which was consistent with other treatment records. The ALJ gave little weight to Tajon, Plaintiff's primary therapist, because the ALJ determined that his opinion that Plaintiff suffered "extreme" limitations was not supported by the evidence in the record.

Specifically, most examination notes indicated that Plaintiff's demeanor was cooperative and pleasant (AR 588), even if Plaintiff was sometimes irritable and anxious (AR 586).

Finally, at step five, the ALJ determined that there were a significant number of jobs in the local and national economies that Plaintiff could perform, such as a packer, bench worker, and inspector. Thus, the ALJ determined that Plaintiff was not disabled. (AR 23-24.)

It important to note here that the ALJ's conclusion with regard to identified available jobs Plaintiff could perform contained a significant error, which Defendant now concedes. Two of the three jobs noted in the ALJ's report indisputably fell <u>outside</u> of Plaintiff's capabilities. Pursuant to the <u>Dictionary of Occupational Titles</u> (U.S. Dep't of Labor, 4th ed. rev. 1991), packer jobs require an exertional level of light or above and are not consistent with Plaintiff's RFC limitation of sedentary work. In addition, the only "bench worker" job at the Plaintiff's sedentary exertion level is jewelry bench worker, a highly skilled position that Plaintiff is unqualified for.

12

Only the "inspector" jobs category, such as cigarette making machine catcher, dowel inspector, and film touch-up inspector lack required skills or activity beyond Plaintiff's RFC. Plaintiff, of course, cannot be considered disabled if, in the national economy, there are a significant numbers of jobs "having requirements which [Plaintiff] [is] able to meet with [his] physical or mental abilities and vocational qualifications" -- even if only in <u>one</u> occupation. 20 C.F.R. § 404.1566(b). Nevertheless, it is important to emphasize that, when the erroneously identified jobs are combed out, Plaintiff's supposed ability to work existed only in a narrow band of employment, significantly more constricted that the areas identified by the ALJ.

Plaintiff appealed the ALJ's decision, and on December 18, 2012, the notice of appeals council action was issued making the ALJ's decision final and subject to review.

### III. DISCUSSION

A. <u>Legal Standard</u>

The Social Security Act sets forth the requirements for receiving disability insurance:

> An individual shall be determined to be under a
> disability only if his physical or mental
> impairment or impairments are of such severity
> that he is not only unable to do his previous work
> but cannot, considering his age, education, and
> work experience, engage in any other kind of
> substantial gainful work which exists in the
> national economy, regardless of whether such work
> exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or
> whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A). In applying this standard, the plaintiff "has the burden of showing a disability serious enough to prevent him from working at his former jobs, at which point the burden shifts to the [Commissioner] to show the existence of other jobs in the national economy that the [plaintiff] can nonetheless perform." Vazquez v. Sec'y of Health & Human Svcs., 683 F.2d 1, 2 (1st Cir. 1982).

In reviewing a decision by the Commissioner, the findings "as to any fact, if supported by substantial evidence, shall be conclusive." Id. § 405(g). The court must defer to the Commissioner on the resolution of conflicts in the evidence and uphold the Commissioner's decision "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the] conclusion." Rodriguez v. Sec'y of Health &

Human Svcs., 647 F.2d 218, 222 (1st Cir. 1981).

B. **Basis for Remand**

Plaintiff presents four objections to the ALJ's decision. First, he argues that the ALJ erred at Step Two of his analysis, in finding that Plaintiff's only severe mental impairment was anxiety, as the medical record supported the existence of a separate impairment, Post Traumatic Stress Disorder ("PTSD"). Along with this contention, Plaintiff argues that the ALJ also erred at Step Three of his analysis, because Plaintiff's anxiety and PTSD, if properly weighed, equaled a listed impairment, entitling Plaintiff to an automatic finding that he was disabled and entitled to benefits. Second, the ALJ failed to specify what the phrase "limited concentration" meant in connection with the level of functioning actually required by the jobs Plaintiff might be eligible for. Third, the ALJ gave improper weight to the expert testimony of Dr. Kabacoff. Fourth, as the court noted above, several of the jobs found by the ALJ to fall within Plaintiff's limitations were skilled positions for which Plaintiff was unqualified.

The court is persuaded that the ALJ did not explain

sufficiently what he meant by "limited concentration" and, accordingly, will remand to permit the ALJ to further develop the record with respect to this issue. For the reasons set forth more fully below, the lack of any adequate discussion on this point is particularly critical in light of the ALJ's error in identifying potential employment appropriate for Plaintiff.

The arguments offered by Plaintiff not related to this issue of "limited concentration" lack merit and require only a brief discussion.

First, substantial evidence supported the ALJ's conclusion that Plaintiff's anxiety, even in combination with his PTSD, did not meet or equal the listing of adult mental disorders in 12.06 of the Listing of Impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1. at 12.06 (Anxiety Related Disorders). Plaintiff contends that the ALJ understated Plaintiff's limitations in the domains of social functioning and maintaining concentration, persistence, or pace. He argues that the ALJ's decision itself contains support for a conclusion of "marked" impairment in social functioning: "when people come over, [Plaintiff] will go to another part

16

of the house." (AR 18.)

A review of the record reveals that substantial evidence supported the ALJ's decision on this point. Plaintiff's alleged PTSD fell generally into the category of anxiety related disorders in Listing 12.06 -- the same category as the anxiety impairment. The ALJ's examination of Plaintiff's severe impairment of anxiety necessarily covered the constellation of symptoms associated with his alleged PTSD. Thus, Plaintiff suffered no harm arising from the fact that PTSD was not specifically identified at Step Two of the ALJ's analysis as a severe impairment.

Moreover, substantial evidence supported the ALJ's conclusion at Step Three that the impairment suffered by Plaintiff -- whether considered as a result of PTSD, anxiety, or a combination of the two -- was simply not sufficiently severe to meet or medically equal one of the listed impairments. The basis for this conclusion was the ample evidence in the record of Plaintiff's capabilities: he maintained relationships with his girlfriend, children, and core group of friends; could drive and shop on his own; and was pleasant and cooperative in his therapy appointments.

When compliant with his medication regime, Plaintiff could control his temper and mood, as well as sleep better. The ALJ's determination not to give the Tajon evaluation significant weight was reasonable since his conclusions were not consistent with significant portions of the medical evidence.

The other two objections to the ALJ's decision -- putting to one side for the moment the issue of Plaintiff's "limited concentration" -- may be passed over even more quickly. Dr. Kabacoff was a licensed psychologist with experience testifying in about forty previous social security hearings. Plaintiff's objections to her area of specialization and her conduct at the hearing did not disqualify her as a helpful expert. Finally, and at the risk of repetition, the court <u>has</u> noted that the ALJ erred in identifying certain jobs, indeed the bulk of the jobs, Plaintiff appeared to be qualified for.

This leaves the issue of Plaintiff's "limited concentration" and the puzzling question of what this phrase actually means in the context of an actual job. Plaintiff is correct that the ALJ erred in not explaining what impact

18

Plaintiff's undisputed, significant limitation on his ability to concentrate would have upon his work related functions. The standards set forth in Social Security Rulings are clear that the ALJ express RFC limitations "in terms of work-related functions." For example, "[w]ork related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." (SSR 96-8P, July 2, 1996, 1996 WL 374184.) If an individual suffers a "substantial loss of ability" to meet any of the above functions due to a mental impairment, a finding of disability is justified if the potential occupational base is severely limited. (SSR 85-15, 1985 WL 56857.)

The ALJ's decision acknowledges Plantiff's significantly limited ability to concentrate. Given this, it is hard to conceive how an individual with this limited ability -- at least as that phrase might be construed upon adequate analysis -- could actually sustain employment as,

for example, a cigarette machine catcher, dowel inspector, or film touch-up inspector, as the ALJ's decision suggests. The fact that the ALJ's decision is not specific enough to determine what a finding of "limited concentration" means as a practical matter is, as the court has noted, critically significant because Plaintiff's potential occupational base is very small, given his RFC. The court will remand for further exploration of this issue.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion (Dkt. No. 15) is hereby ALLOWED insofar as the case is remanded to the ALJ to further develop the record with respect to Plaintiff's limitation in concentration and its impact on his capacity for employment within the much more limited range of jobs that Defendant now agrees is available to Plaintiff. Defendant's motion (Dkt. No. 19) is hereby DENIED. The clerk will enter judgment for Plaintiff. This case may now be closed.

It is So Ordered.

/s/ Michael A. Ponsor
MICHAEL A. PONSOR
U. S. District Judge